988 F.2d 126
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby Jo WHITELY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenton Lee THOMPSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Connie Jean THOMPSON, Defendant-Appellant.
 Nos. 92-30065, 92-30066 and 92-30146.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 6, 1993.*
Decided Feb. 18, 1993.
 
 Appeal from the United States District Court For the District of Oregon; Nos. CR-91-91-04-JAR, CR-91-91-05-JAR and CR-91-91-02-JAR. James A. Redden, District Judge, Presiding.
 D.Or.
 AFFIRMED.
 Before D.W. NELSON, TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bobby Joe Whitely, Kenton Thompson, and Connie Jean Thompson appeal from the sentences imposed for crimes relating to the manufacture and distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) (1988). Connie Jean Thompson also appeals from her conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.
 
 I. Bobby Jo Whitely
 
 3
 Whitely contends that the district court erred because it failed to make a finding regarding whether he was entitled to a downward adjustment in his sentence for incomplete duress because he was afraid of Kenton Thompson. Sentencing Guideline § 5K2.12 allows the court to depart downward from the applicable guideline range if the defendant committed the offense because of "serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." We review the legality of a sentence de novo. United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992).
 
 
 4
 The Presentence Report ("PSR") did not address the issue of whether Whitely's alleged fear of Mr. Thompson constituted such duress. Whitely's counsel then submitted a letter to the court styled as a "supplement" to the PSR, a "motion for an adjustment for [Whitely's] role in the offense ... and a motion for downward departure." Among other things, the letter alleged that Whitely was unable to leave the marijuana growing operation because he feared retaliation from Mr. Thompson.
 
 
 5
 At the sentencing hearing, the court read the letter and Whitely's counsel made an extended plea that the sentence be reduced due to duress. The government countered that the record did not support Whitely's assertions of fear. The Findings of Fact Order did not specifically address the duress claim; the court noted only that it found "no reason for departure" from the Guidelines.
 
 
 6
 Whitely alleges that the district court failed to follow Fed.R.Crim.P. 32(c)(3)(D), which requires the sentencing court either to make a finding as to the accuracy of each challenged assertion in the PSR, or to indicate that the controverted matter will not be taken into consideration in sentencing. Rule 32(c)(3)(D), however, applies only to alleged factual inaccuracies in the PSR. By its own terms, Whitely's letter constituted a "motion for downward departure" for incomplete duress, rather than a factual objection to the PSR. It is well settled that a district court's discretionary decision not to depart downward from the applicable Guideline range is not reviewable. See United States v. Garcia-Garcia, 927 F.2d 489 (9th Cir.1991). We are therefore without jurisdiction to review the district court's decision, and the sentence must be AFFIRMED.
 
 II. Kenton Lee Thompson
 
 7
 Mr. Thompson contends that the district court erred by not specifically enforcing his plea agreement with the government. Alternatively, he argues that the court should not have enhanced his sentence pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm.
 
 
 8
 As part of the plea agreement, the government agreed not to recommend a two level enhancement for possession of a firearm. At sentencing, the court stated explicitly that Mr. Thompson's sentence did not include an enhancement for possession of a firearm. The government thus complied with the plea agreement, and Mr. Thompson did not in fact receive an enhancement for possession of a firearm. His sentence is AFFIRMED.
 
 
 9
 Mr. Thompson's counsel, W Mark McKnight, has moved to withdraw on the grounds that this appeal is wholly frivolous. Because we agree that the appeal is entirely without merit, Mr. McKnight's motion is GRANTED.
 
 III. Connie Jean Thompson
 A. Denial of Motion for Franks Hearing
 
 10
 Ms. Thompson contends that the search of the Stoller Road property was illegal because the affidavit behind the warrant was not supported by probable cause, and that the district court erred by denying her a hearing on this issue pursuant to Franks v. Delaware, 438 U.S. 154 (1978). A defendant may challenge a facially valid warrant affidavit and request a hearing if she shows by a preponderance of the evidence that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit would be insufficient to support a finding of probable cause without those statements. Id. at 171-72; United States v. Stanert, 762 F.2d 775, 780 (9th Cir.), amended on other grounds, 769 F.2d 1410 (1985). If the defendant meets that standard, the Fourth Amendment requires the court to hold an evidentiary hearing. Stanert, 762 F.2d at 780.
 
 
 11
 We review a denial of a Franks hearing de novo. United States v. DiCesare, 765 F.2d 890, 895 (9th Cir.), amended on other grounds, 777 F.2d 543 (1985). Whether misstatements and omissions are material to a finding of probable cause is also reviewed de novo. United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988). Whether false statements are intentional or reckless, however, is a factual finding reviewed for clear error. Id.
 
 
 12
 On appeal, Ms. Thompson contests the validity of a portion of the affidavit in which Officer Larry Henry cited a Portland Gas Electric chart to support his assertion that the monthly power consumption rate for one of the barns on the Thompson property was inconsistent with regular power usage, but consistent with the operation of eight grow lights. In fact, the chart listed the power requirements for varying numbers of grow lights, rather than power consumption rates for barns. Thus, Ms. Thompson argues, Henry had no basis for his allegation that the barn was using an unusual amount of power consistent only with eight grow lights.
 
 
 13
 The district court found that Officer Henry "did not intentionally or recklessly mislead" the magistrate issuing the search warrant; rather, "he provided information which was true or which he believed to be true." In reaching this finding, however, the district court partially relied on factors not contained in Officer Henry's affidavit.[1] The district court should have confined its analysis to statements actually contained in the affidavit. See Stanert, 762 F.2d at 778.
 
 
 14
 Nevertheless, this section was only one paragraph of an eight page affidavit. In the remainder of the affidavit, Henry set out his professional observations of indoor marijuana growing operations and the factors which led him to believe that the Thompsons were engaged in such activity. He attested that the investigation of the Thompsons' operation was first triggered when Whitely and J.D. Conner, using aliases, used cash to purchase five different $3,000 cashier's checks at four different banks. Later, dogs detected the scent of marijuana on this cash. Police learned Whitely's identity when he was stopped on a traffic matter and was subsequently arrested for violating probation. Whitely informed police that he lived with Kenton Thompson and that it was possible, based on what he knew, that Thompson was growing marijuana in two barns on the property.
 
 
 15
 Based on all of the information in the affidavit, Officer Henry's statements regarding the power used by the barn were not necessary to support a finding of probable cause. Thus, the district court did not err by denying Ms. Thompson a Franks hearing. See Dozier, 844 F.2d at 705. Her conviction is AFFIRMED.
 
 B. The Number of Marijuana Plants
 
 16
 Ms. Thompson contends that the district court erred by finding her responsible for the growth of 1,365 marijuana plants because this figure was based on unreliable testimony from an unindicted coconspirator whom Ms. Thompson did not have the opportunity to cross-examine. Factual findings during sentencing are reviewed for clear error. United States v. Upshaw, 918 F.2d 789, 791 (9th Cir.1990), cert. denied, 111 S.Ct. 1335 (1991).
 
 
 17
 A sentencing court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, as long as sufficient indicia of reliability exist. U.S.S.G. § 6A1.3(a); United States v. Notrangelo, 909 F.2d 363, 365 (9th Cir.1990). The sentencing court may also rely on testimony from witnesses whom the defendant did not have an opportunity to cross-examine, particularly if the defendant had an opportunity to object to the controverted information in the PSR and at the sentencing hearing. Notrangelo, 909 F.2d at 365.
 
 
 18
 Ms. Thompson argues that her sentence should be based solely on the 400-700 plants which were grown at Stoller Road. Ms. Thompson objected at sentencing to the government's proffer of grand jury testimony from Randy Auxier, who held title to one of the other properties, to support the contention that Ms. Thompson was responsible for the growth of over 1,000 plants. Ms. Thompson asserts that Auxier's testimony was neither reliable nor credible because he was an unindicted coconspirator testifying for the government in order to avoid going to prison and because she had never cross-examined him.
 
 
 19
 The district court based its estimate of the total number of marijuana plants attributable to Ms. Thompson on the number of grows involved, the amount estimated in each grow, and U.S.S.G. §§ 1B1.3 and 2D1.1.[2] The court relied on the PSR, the testimony of Grand Jury witnesses, and Ms. Thompson's own testimony. Ms. Thompson objected both in writing and at sentencing to the PSR recommendation, testified at the sentencing hearing, and called numerous witnesses on her behalf.
 
 
 20
 The evidence supports a finding that Ms. Thompson was involved in the practical matters of the grow operation and that she was aware of the full scope of operations. It was not clear error for the district court to hold her accountable for all of the marijuana plants involved. See Upshaw, 918 F.2d at 791. Her sentence is AFFIRMED.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The court relied on evidence that: the barn was using six times as much power as it had under the previous owner; surveillance of the barn revealed no legitimate activity consistent with high power usage; other barns in the area used significantly less power; other barns on the property used no power at all; and Whitely had told Henry that the barn was kept locked and that Whitely had never observed any activities involving the barn
 2 U.S.S.G. § 1B1.3(a) requires that the defendant be held accountable for all acts which the defendant committed or aided and abetted in furtherance of the offense.
 U.S.S.G. § 2D1.1, Application Note 12, directs sentencing courts to approximate the quantity of the relevant controlled substance involved if the amount of the drug seized does not reflect the scale of the offense.