15 F.3d 1090
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael BUCHHOLZ, aka James Alan Barnett, Defendant-Appellant.
 No. 93-30022.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 16, 1993.*
Decided Dec. 22, 1993.
 
 Before: GOODWIN, CANBY and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Michael Buchholz appeals his jury conviction and sentence for drug trafficking, contending that (1) the district court should have vacated his conviction on one count and (2) the court erred in attributing various amounts of cocaine to Buchholz at sentencing. We AFFIRM.
 
 
 3
 In August, 1992, the jury convicted Buchholz of various drug trafficking crimes, following a trial before the Honorable Charles R. Weiner, visiting judge. Four codefendants, who pled guilty to drug trafficking charges, testified against Buchholz pursuant to plea bargains. All four identified Buchholz as one of their cocaine suppliers and described particular drug transactions. Federal agents testified that they had purchased cocaine from some of these witnesses and reported that they had found a red spiral notebook allegedly listing drug transactions, $14,900 (including police "buy" funds) and an unopened container of Inistotal, a cocaine diluting material, in Buchholz's Bronco.
 
 
 4
 The jury found Buchholz guilty on all seven of the counts presented to it,[1] convicting him of two counts of conspiracy to distribute cocaine in violation of 21 U.S.C. Secs. 841 and 846, four counts of distribution of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and one count use of a communication device in a drug trafficking crime in violation of 21 U.S.C. 843(b). The district court denied Buchholz's motion to vacate his conviction on Count IV, one of the distribution counts.[2]
 
 
 5
 Thereafter, on December 23, 1992, the Honorable H. Russell Holland sentenced Buchholz to 97 months in prison followed by 60 months supervised release. In calculating this sentence, the judge considered not only the cocaine transactions described at trial, but also additional transactions purportedly recorded in the red spiral notebook found in Buchholz's Bronco. This cocaine was attributed to Buchholz as "relevant conduct" within the meaning of Sec. 1B1.3(a)(2) of the Sentencing Guidelines.
 
 
 6
 On appeal, Buchholz argues that the court erred (1) in denying his motion to vacate his conviction on Count IV and (2) in calculating the cocaine attributable to him under U.S.S.G. Sec. 1B1.3(a)(2). We hold that there was sufficient evidence to support a conviction on Count IV and that any sentencing error was harmless.
 
 
 7
 I. SUFFICIENCY OF THE EVIDENCE AS TO COUNT IV
 
 
 8
 Count IV (Count III of the redacted indictment) charged Buchholz with distributing five ounces of cocaine on November 21, 1991. On that date, codefendant Larry West sold five ounces of cocaine to an undercover government agent. West testified that Buchholz supplied this cocaine and that he wired the sale proceeds to Buchholz the following day. Buchholz contends that this evidence was insufficient to support his conviction because West's testimony implied that Buchholz physically delivered four of the five ounces to West's Alaska apartment on November 21. Buchholz was in California from November 20-25. Although Buchholz concedes that the evidence supports his conviction as to one ounce,[3] he contends that we must set aside his conviction because he could not have delivered the four additional ounces on November 21.
 
 
 9
 This argument is not persuasive. We may vacate Buchholz's conviction only if " 'reviewing the evidence in the light most favorable to the prosecution, [we find that no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence and inferences drawn from it can be sufficient to sustain a conviction, United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992), as can the uncorroborated testimony of an accomplice, unless it is incredible or insubstantial on its face. United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 947 (1992). Under this standard, Buchholz's conviction must be affirmed.
 
 
 10
 Contrary to Buchholz's claims, West did not specifically state that Buchholz personally delivered cocaine on November 21. He testified:
 
 
 11
 Q: Now, on Nov. 21st when you sold five ounces to Lynn [the government agent] at her apartment, was Buchholz the source of that cocaine?
 
 
 12
 A: Yes.
 
 
 13
 Q: How did you contact him to provide that cocaine?
 
 
 14
 A: I called and got a hold of him and he said that he would stop by--
 
 
 15
 The Court: Just a little bit louder please?
 
 
 16
 A: I called and got a hold of him and he said he would stop by. A lot of times it wasn't immediately, he was sometimes busy or had other things to do and he didn't stop by right away. So, I had called and asked him to stop by when he could.
 
 
 17
 Q: And for that five ounce buy, did he in fact, stop by?
 
 
 18
 A: Yes, Ma'am.
 
 
 19
 West never directly states that Buchholz "came by" on November 21 and the government agent who bought the cocaine stated that, on November 13, she told West she wanted to purchase "more than four ounces." Buchholz could have delivered the cocaine to West before he left for California, and West later implies that he does not remember exactly when Buchholz "came by." "I'm not positive which time [he stopped by] was it [the four ounces]." West recalled that he already had one ounce from Buchholz and obtained four more in order to make the sale. Although he was vague about dates, he indicated he knew what cocaine came from what source, which makes sense given that he had to pay his sources.
 
 
 20
 Circumstantial evidence and West's other testimony supports his claim that Buchholz supplied the five ounces. West stated that he wired the sale proceeds to Buchholz on November 22. Payment after a sale was standard procedure because Buchholz often "fronted" cocaine to West and the other codefendants, who were unable to pay him until they sold the drugs. At the time of the November 21 transaction, West owed Buchholz money and was giving him his entire proceeds whenever he sold Buchholz's cocaine. Id. A Western Union agent confirmed that Buchholz received money in California on November 22.
 
 
 21
 In the context of West's entire testimony, his testimony about the November 21 transaction is not insubstantial or incredible on its face. West testified at length and in detail about his relationship with Buchholz and the manner in which they conducted their business. He described a conspiracy of a year's duration, and testified that Buchholz was his source for some of his sales to the undercover agent and that other persons were suppliers on other occasions.[4] Some portions of his testimony were corroborated by documents such as receipts, electronically recorded conversations, federal agents, his girlfriend and other codefendants. The jury had ample opportunity to judge his credibility. His testimony was not inherently incredible.
 
 
 22
 A defendant does not have to be physically present at a drug sale to be convicted of distribution, United States v. Martinez, 573 F.2d 529, 532 (8th Cir.1978), and he does not have to actually sell drugs to aid and abet in their distribution, United States v. Weaver, 594 F.2d 1272, 1275 (9th Cir.1979). Viewing the record as a whole, we cannot say that no rational trier of fact could find that Buchholz supplied West with cocaine several days before West sold it on November 21 and that Buchholz commanded, induced or procured West to distribute this cocaine and wire him its proceeds.
 
 II. SENTENCING
 
 23
 Buchholz next argues that the district court erred in calculating the amount of drugs attributable as Relevant Conduct under the Guidelines. He asserts that the court erred in (1) crediting West's testimony that he had helped Buchholz "break up" a kilo of cocaine and (2) using the red notebook to infer additional drug trafficking. We review for clear error, United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992). Buchholz's first claim is patently frivolous and the use of the notebook was harmless whether or not it was competent evidence.
 
 A. The Calculations
 
 24
 After a detailed hearing at which the court made every effort to avoid double-counting cocaine transactions, the court attributed 3,492 grams of cocaine to Buchholz.[5] 2,416 grams of this cocaine was based on Buchholz's relationships with Larry West, Townsend and Russ Ogden, all of whom pled guilty to drug trafficking and implicated Buchholz in their crimes. West and Townsend both testified at Buchholz's trial and the judge based his findings on their trial testimony. Ogden, Buchholz's roommate, did not testify; the judge based his findings about Ogden on Ogden's statements at his sentencing.[6]
 
 
 25
 The other 1,076 grams were based on the government's interpretation of Buchholz's red notebook, as translated by Townsend and West. One page of the notebook, which contains multiple pages of telephone numbers, as well as phone messages in different handwriting and a "will work for food" message, shows a list of nicknames and numbers followed by decimal numbers. According to Townsend, the only defendant who admitted seeing Buchholz write in the book, these numbers are records of money amounts various individuals owed Buchholz for cocaine. The notebook has no dates.
 
 B. West's Testimony
 
 26
 Buchholz's claim that the court erred in crediting West's testimony has no merit. At Buchholz's trial, West testified that Buchholz supplied him with thirteen of the fourteen ounces he sold to government agents (368 grams). Buchholz argues that the court erred in finding that Buchholz was responsible for four of these thirteen ounces, because West's testimony implied Buchholz delivered this cocaine during the time Buchholz was in California. We have already rejected this argument.
 
 
 27
 West also testified that he helped Buchholz "break up" a kilo of cocaine in a silver mixing bowl. West's girlfriend partially corroborated his story. Buchholz argues that the court erred in using this testimony to attribute an additional 1,000 grams, claiming that West's testimony implied that this kilo was cut up when Buchholz was in California. Reviewing the record, we find that this argument is patently frivolous. West stated repeatedly that he could not remember when he helped cut up the kilo, but that it was "late in the year." Defendant's apparent interpretation of this testimony as "November 20-25" is wholly unsubstantiated. West's testimony referred not only to the kilo and the thirteen ounces sold to the undercover agent, but also to a conspiracy of some duration, during which saw and heard considerable evidence that Buchholz was handling large amounts of cocaine. It was not clearly erroneous for the district court to attribute this kilo to Buchholz.
 
 C. The Notebook
 
 28
 Buchholz's claim that the court erred in using the notebook to calculate his sentence raises an interesting abstract question. The government has the burden of proving the facts pertinent to sentencing under a preponderance standard, United States v. Restrepo, 946 F.2d 654, 655 (9th Cir.1991). The evidence about the notebook was sketchy at best, particularly about the time of the transactions it allegedly documents. United States v. Hahn, 960 F.2d 903, 910 (9th Cir.1992) (to prove conduct is relevant for purposes of U.S.S.G. Sec. 1B1.3(a)(2), the government must establish that the conduct is sufficiently similar and recent to constitute a pattern of criminal activity) (citations omitted); United States v. Phillippi, 911 F.2d 149, 151 (8th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 702 (1991) (district court clearly erred in attributing cocaine which could have been delivered to the defendant as remotely as two years before the convicted offense).
 
 
 29
 However, if the sentencing court's decision to credit the notebook was error, it is harmless. Buchholz would have received a base offense level of 28, even if the court had refused to consider the notebook. See U.S.S.G. 2D1.1(8), imposing a base offense level of 28 for "at least 2 KG but less than 3.5 KG of cocaine." An error in calculating the amount of drug attributable to a defendant is harmless if it does not change the base offense level. Phillippi, 911 F.2d at 151. Thus, we find it unnecessary to decide whether a substantial foundation was made for the use of the notebook.
 
 
 30
 The judgment of conviction and sentence is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Two counts of the original indictment were dismissed during the trial because of inconsistent testimony and multiplicity
 
 
 [2]
 Buchholz also twice moved to dismiss this count during trial
 
 
 [3]
 The government argues that the conviction is valid regardless of the source of the four ounces, since amount is not an element of Sec. 841(a)(1). Because we find that the evidence was sufficient to sustain a conviction for distributing five ounces, we do not address this argument
 
 
 [4]
 One count against Buchholz was dropped during trial because West testified that someone else supplied the cocaine he sold to a government agent on November 1
 
 
 [5]
 The presentence report had attributed 6,561.98 grams to Buchholz, including 4,000 from the notebook. In response to Buchholz's objections that some of this evidence was unreliable and that the presentence report might have double counted various cocaine deals, the court refused to consider a large portion of the evidence presented. Buchholz does not raise any double counting objections in this court
 
 
 [6]
 The sentencing court was familiar with Ogden's statements because he sentenced Ogden as well as Buchholz. Although Ogden's sentencing records are sealed, Buchholz does not object to the court's use of his testimony