[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14729
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cr-80091-DTKH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CYRUS BERNARD RICHARDSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 27, 2018)

Before TJOFLAT, WILSON and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Cyrus Richardson appeals from his 108-month, above-Guidelines sentence following his conviction for bank fraud, challenging the application of a two-level sentence enhancement under U.S.G.G. § 2B1.1(b)(11)(C)(i).  Section 2B1.1(b)(11)(C)(i) provides for a two-level sentence enhancement if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."  Sentencing Commission, *Guidelines Manual*, § 2B1.1(b)(11)(C)(i) (Nov. 1, 2016).  On appeal, Richardson first argues that his November 2014 offense should not have been considered "relevant conduct" for the purposes of sentencing.  Second, Richardson contends that even if his November 2014 offense were relevant conduct, the enhancement is inapplicable to his case because the record lacks evidence showing how he obtained the false identification.  For the reasons set forth below, we affirm.

## I.

For sentencing issues, we review "purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with 'due deference.'"  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quoting *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136-37 (11th Cir. 2004)).  The "due deference"

2

standard is tantamount to clear error review. *Id.* Clear error exists when this Court is "left with a definite and firm conviction that a mistake has been committed." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (quoting *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010)).

## II.

The sentencing court must consider all relevant conduct, as described in U.S.S.G. § 1B1.3(a), when determining a defendant's sentence. *United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015). We review for clear error whether the District Court erred in treating certain conduct as relevant conduct for sentencing purposes. *Id.* Relevant conduct is defined broadly and includes both uncharged and acquitted conduct that is proven by a preponderance of the evidence at sentencing, *id.*, embracing "all acts and omissions committed . . . or willfully caused by the defendant," U.S.S.G. § 1B1.3(a)(1)(A). Furthermore, where the offense level is driven largely by amount of loss—as is the case here—conduct that was "part of the same course of conduct or common scheme or plan as the offense of conviction" is considered relevant conduct. *Id.* §§ 1B1.3(a)(2), 3D1.2(d). As the commentary to the Guidelines explains

> For two or more offenses to constitute part of a common scheme, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*. . . . Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or

3

related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.  Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required.

*Id.* § 1B1.3, cmt. n.5(B).  We consider "whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind."  *United States v. Valladares*, 544 F.3 1257, 1268 (11th Cir. 2008).

In previous cases, this court has found a defendant's separate schemes or transactions to be insufficiently connected to constitute relevant conduct.  In *United States v. Maxwell*, we considered whether the defendant's past conduct involving a cocaine distribution scheme was relevant conduct in deciding the defendant's sentence for his conviction of conspiring to distribute dilaudid and of making a single cocaine sale.  *United States v. Maxwell*, 34 F.3d 1006, 1010-11 (11th Cir. 1994).  We observed that

The commentary [to the Guidelines] . . . makes clear that § 1B1.3 is designed to take account of "a pattern of misconduct that cannot readily be broken down into discrete, identifiable units that are meaningful for purposes of sentencing."  Thus, "when illegal conduct does not exist in discrete, identifiable units apart from the offense of conviction, the Guidelines anticipate a separate charge for such conduct."

4

*Id.* (quoting *United States v. Hahn*, 960 F.2d 903, 909 (9th Cir. 1992)).  We ultimately held that the district court in *Maxwell* erred in finding that the cocaine-distribution scheme was "relevant conduct" for sentencing on the conspiracy conviction.  *Id.* at 1013.  The two schemes did not involve any of the same parties, were temporally remote—the sale of cocaine occurring more than one year after the conspiracy to distribute dilaudid—and lacked any "distinctive similarities" signaling they were part of the same "course of conduct."  *Id.* at 1011-12.

On the other hand, we have affirmed a district court's finding of relevant conduct under § 1B1.3 when the defendant's separate schemes or transactions, viewed broadly, shared a common victim, purpose, and *modus operandi*.  *See, e.g.*, *Siegelman*, 786 F.3d at 1332-34 (concluding that the "common victim" was the people of Alabama, the "common purpose" to obtain money and power, and the "similar *modus operandi*" the use of defendant's political power); *Valladares*, 544 F.3d at 1261 (concluding that the "common victim" was Medicare, "common purpose" to defraud Medicare, and "similar *modus operandi*" to submit fraudulent claims to Medicare for reimbursement).  We also have affirmed when it was "plausible in light of the record viewed in its entirety" that the conduct was part of the "same common scheme or plan" as the offense of conviction.  *Siegelman*, 786 F.3d at 1333.

5

In this case, the District Court did not clearly err in finding Richardson's November 2014 offense to be conduct relevant to the offense of conviction. Between his offense of conviction and the November 2014 offense, Richardson's acts shared "distinctive similarities," *Valladares*, 544 F.3d at 1268. Both involved using false identifying information to defraud banks, and both were part of a long line of Richardson's bank frauds and attempted bank frauds that occurred in a short period of time. *See* U.S.S.G. § 1B1.3, cmt. n.5(B) (listing "degree of similarity of offenses," "regularity of the offenses," and "time interval between the offenses" as factors supporting a finding of relevant conduct). While Richardson relies on *Maxwell* in support of his argument, his reliance is misplaced. Unlike in *Maxwell*, where the incidents were "temporally remote" because they occurred over a year apart, *Maxwell*, 34 F.3d at 1011, the November 2014 offense and the offense of conviction were separated by only six weeks. Considering the record as a whole, it was plausible that the offenses were "part of the same course of conduct or common scheme or plan as the offense of conviction." *Siegelman*, 786 F.3d at 1333; U.S.S.G. § 1B1.3(a)(2).

## III.

Having found that the November 2014 offense was relevant conduct for the purposes of sentencing, we must consider whether the District Court erred in applying the two-level sentence enhancement for identity theft. Section

6

2B1.1(b)(11)(C)(i) of the Guidelines authorizes a two-level enhancement if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."  U.S.S.G. § 2B1.1(b)(11)(C)(i).  "Means of identification" include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," which includes a person's name, date of birth, and driver's license number.  *Id.* § 2B1.1, cmt. n.1; 18 U.S.C. § 1028.

It is uncontested that Richardson used a fraudulent driver's license in the November 2014 offense.  This fraudulent license bore the name and date of birth of C.N., but contained Richardson's photograph rather than a photograph of C.N. Nonetheless, Richardson argues that the District Court erred in applying the enhancement because it lacked evidence that Richardson was involved in converting the first means of identification, *i.e.*, C.N.'s driver's license, into the other, *i.e.*, the fraudulent driver's license.

We disagree.  In determining whether a sentencing enhancement applies, a district court is "permitted to draw reasonable inferences from the facts."  *United States v. Jones*, 533 F. App'x 488, 459 (5th Cir. 2013) (quoting *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)).  Because the driver's license contained Richardson's photograph, it was reasonable for the District Court to conclude that he at least took part in the production of the fraudulent license by

7

supplying his photograph. *Id.* at 459-60 (holding that the identity-theft sentence enhancement applied without direct evidence that defendant created the fraudulent identification card.) Thus, the District Court did not clearly err in determining that the identity-theft sentence enhancement applied.

## IV.

For the reasons discussed above, we affirm Richardson's sentence.

**AFFIRMED.**