UNITED STATES of America, Appellee,

v.

Alvin SANTIAGO, Defendant–Appellant.

No. 1331, Docket 90–1056.

United States Court of Appeals, Second Circuit.

Argued May 30, 1990.

Decided June 22, 1990.

Charles A. Caruso, Asst. U.S. Atty., Rutland, Vt. (George J. Terwilliger, III, U.S. Atty. for the District of Vermont, John–Claude Charbonneau, Asst. U.S. Atty., Rutland, Vt., on the brief), for appellee.

Carroll, George & Pratt, Rutland, Vt. (John J. Kennelly, Thomas A. Zonay, Rutland, Vermont, of counsel), submitted a brief for defendant-appellant.

Before LUMBARD, KEARSE, and MINER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Alvin Santiago appeals from a final judgment of conviction entered in the United States District Court for the District of Vermont following his plea of guilty before Franklin S. Billings, Jr., Chief Judge, to six counts of an indictment charging him with, *inter alia*, use of the telephone to commit a felony, in violation of 21 U.S.C. § 843(b) (1988) (count 3); interstate travel with the intent to distribute narcotics, in violation of 18 U.S.C. §§ 1952 and 2 (1988) (count 4); and distribution of cocaine and heroin, and possession of those narcotics with intent to distribute, all in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (counts 5–8). He was sentenced principally to four concurrent 66–month terms of imprisonment on counts 5–8, and two concurrent 48–month terms of imprisonment on counts 3 and 4, to run concurrently with the sentences on counts 5–8. On appeal, Santiago contends principally (1) that in calculating his base offense level under the Sentencing Guidelines ("Guidelines"), the court should not have considered amounts of narcotics that were not seized and with which he was not charged in the indictment, and (2) that the court should not have denied him credit for acceptance of responsibility with respect to his offense conduct. Though we reject

Santiago's first contention, there is merit in the second in light of our recent decision in *United States v. Oliveras,* 905 F.2d 623 (2d Cir.1990) (per curiam). Accordingly, we affirm in part, vacate in part, and remand for resentencing.

## I. BACKGROUND

During a 1988 investigation, law enforcement agents determined that one Michael Shattuck was a source of heroin that was being distributed in northeastern Vermont. From February through August 1988, Shattuck traveled from Massachusetts to Vermont two to three times per month and brought with him on each occasion 150 to 200 .03–.04–gram bags of heroin. He was arrested in August and eventually agreed to cooperate in an investigation into his sources of supply.

Shattuck identified one of his sources as Santiago, stating that he had obtained 300 to 500 bags of heroin from Santiago on approximately a dozen occasions. Santiago resided in the Bronx, New York, and telephone toll records seized by the agents revealed numerous calls by Shattuck to Santiago. Shattuck said he had made these calls to arrange for heroin purchases; he would then sometimes travel to New York to obtain the narcotics, but usually Santiago would deliver them to him in Connecticut. In March 1989, the agents had Shattuck telephone Santiago and ask him to deliver 1,000 bags of heroin to Shattuck in Vermont. Santiago initially suggested that they meet where they had met the time before, but eventually he agreed to deliver the heroin, plus two ounces of cocaine, to Shattuck in Vermont.

On April 7, Santiago, accompanied by Priscilla Santiago ("Priscilla"), his common-law wife, went to Brattleboro, Vermont; there they met in a motel room with Shattuck, who was wearing a wire. Santiago was heard to say he had the "coke and heroin." Santiago and Shattuck then went out to a vehicle, where Santiago delivered 1,000 bags of heroin and two ounces of cocaine to an undercover agent. Santiago was promptly arrested. The total weight of the heroin delivered was approximately

50 grams; the total weight of the cocaine was 52.94 grams.

After his arrest, Santiago stated that he had come to Vermont for the purpose of supplying Shattuck with heroin and cocaine and admitted that he had sold 300 to 500 bags of heroin to Shattuck approximately five times in the past. Priscilla too was arrested, and she likewise stated that Santiago had previously sold Shattuck narcotics on a number of occasions.

Santiago and Priscilla were indicted in an eight-count indictment. Santiago was named in seven counts: the six substantive counts described above, *i.e.,* the telephone and travel offenses (counts 3 and 4) and the narcotics possession and distribution offenses (counts 5–8), plus one count of conspiring with Priscilla to distribute, and to possess with intent to distribute, heroin and cocaine (count 1). Priscilla was similarly charged in seven counts: the conspiracy count (count 1), use of the telephone to facilitate the distribution of narcotics (count 2), interstate travel to carry on an unlawful activity (count 4), and the four counts of narcotics possession and distribution (counts 5–8). Both Santiago and Priscilla initially pleaded not guilty to all counts.

In August 1989, Santiago changed his plea to one of guilty to counts 3–8, though he adhered to his plea of not guilty to the conspiracy count. Priscilla maintained her plea of not guilty and went to trial in October 1989; the jury found her guilty on all counts. Thereafter, with leave of the court, the government dismissed the conspiracy count against Santiago.

A presentence report prepared with respect to Santiago recommended, *inter alia,* that Santiago's base offense level be calculated with reference to (a) the heroin and cocaine Santiago delivered on April 7, and (b) all of the heroin he had sold to Shattuck theretofore. Using a Guidelines formula that treats one gram of cocaine as the equivalent of .2 grams of heroin, see Guidelines § 2D1.1 Commentary, Application Note 10, Drug Equivalency Tables, the report calculated that the 52.94 grams of cocaine delivered on April 7 translated to

10.588 grams of heroin. Adding the latter to the 50 grams of heroin delivered on that date, the report concluded that the April 7 quantity of narcotics was the equivalent of 60.588 grams of heroin. As to the prior transactions, the report, which assumed .05 grams of heroin per bag (the average per-bag amount delivered on April 7), calculated that, using the maximum number of bags and occasions described by Shattuck, Santiago had previously delivered to him 300 grams of cocaine ($.05 \times 500 \times 12$); alternatively, using the minimum number of bags and occasions admitted by Santiago in his postarrest statement, Santiago had previously delivered to Shattuck at least 75 grams ($.05 \times 300 \times 5$). Adding the estimated 75– to 300–gram prior deliveries to the 60.588–gram April 7 delivery, the report concluded that Santiago's base offense level should be calculated on the basis of 135.588 to 360.588 grams. The report noted that either quantity fell within the 100–400 gram category of the Guidelines, resulting in a base offense level of 26.

The presentence report also pointed out that Santiago maintained that he had not made Priscilla aware of the contents of the package delivered on April 7. It noted further that Santiago sought to minimize his role both in the April 7 delivery and in the prior sales, claiming that he was merely a reluctant go-between. The report recommended that, in light of these stances, Santiago not be given any reduction in offense level for acceptance of responsibility for his offense.

Santiago objected to portions of the presentence report, contending, *inter alia,* (1) that the alleged but uncharged prior narcotics transactions should not be considered, and (2) that he should be given credit for accepting responsibility for the April 7 delivery. An evidentiary hearing was held, focusing principally on the first objection.

At the hearing, a Vermont State Police officer testified to, *inter alia,* Shattuck's statement that Santiago had sold him 300 to 500 bags of heroin on a dozen occasions, Santiago's postarrest statement that he had sold heroin to Shattuck on five occa-

sions, and Priscilla's statement that Santiago had engaged in transactions with Shattuck on a number of occasions. The officer also testified that telephone toll records supported Shattuck's statement that he had obtained narcotics from Santiago on about a dozen occasions.

Santiago testified at the hearing and denied that he had previously sold narcotics to Shattuck. He also denied telling the law enforcement officers that he had previously distributed narcotics to Shattuck. He sought to explain the incriminating statements he had made in taped telephone conversations with Shattuck by testifying that he had been forced to make those statements by an individual named "Pedro." Santiago said he was merely a go-between in the April 7 delivery to Shattuck.

At the close of the hearing, the district court stated that Santiago's version of the facts was not credible and found that Santiago had delivered heroin to Shattuck on some 12 occasions. The court also found that Santiago had not entirely accepted responsibility for his actions and hence was not entitled to credit under § 3E1.1 of the Guidelines. The court formalized its findings in a written "Statement of Reasons for Sentence" that stated, in pertinent part, as follows:

> [Santiago] possessed with the intent to distribute and distributed between 135.-588 grams of heroin equivalent and 360.-588 grams of heroin equivalent. The guidelines provide that offenses involving between 100 and 400 grams of heroin equivalent have a base offense level of 26. Thus, the base offense level is 26.
>
> . . . .
>
> . . . The court finds that the defendant has not accepted responsibility. The defendant admits his conduct for the count of conviction, but indicates that he did not make his codefendant/girlfriend aware of the content of the package (heroin). He further tended to minimize his involvement in relevant conduct issues including prior distribution to the cooperating individual. Hence, no adjustment for acceptance of responsibility is given.

Noting that the Guideline range for offense level 26 is 63 to 78 months, the court sentenced Santiago, as indicated above, to a total of 66 months' imprisonment. This appeal followed.

## II. DISCUSSION

On appeal, Santiago contends principally (1) that prior transactions not charged in the indictment could not properly be considered in calculating his base offense level, and that in any event the evidence of those claimed transactions was insufficient to permit them to be considered; and (2) that he should not have been denied credit for acceptance of responsibility on account of his refusal to admit (a) that he had told Priscilla the nature of the contents of the package delivered, and (b) that he had previously sold narcotics to Shattuck. We reject most of these contentions but conclude on the basis of *United States v. Oliveras,* 905 F.2d 623, that the district court could not properly deny Santiago credit for acceptance of responsibility on the basis of his denial of prior narcotics transactions.

### A. *Consideration of Uncharged and Unseized Quantities*

■ Santiago's principal challenges to the sentencing court's consideration of the quantities of heroin involved in his past sales to Shattuck are that (a) it is impermissible to consider narcotics that were neither seized nor made the subject of a count of the indictment, and (b) the evidence of prior sales was insufficient. We reject these contentions.

The contention that it is impermissible to consider quantities of narcotics that were neither seized nor charged has recently been rejected by this Court. *See United States v. Colon,* 905 F.2d 580, 586–87 (2d Cir.1990); *United States v. Schaper,* 903 F.2d 891, 898 (2d Cir.1990). The Commentary to § 1B1.3 of the Guidelines states that

in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct

or part of a common scheme or plan as the count of conviction.

In *Schaper,* on an appeal by the government, we vacated a sentence entered after the district court had refused to take uncharged and unseized quantities of narcotics into account. We stated that

[q]uantities of narcotics neither charged in the indictment nor physically seized are "relevant conduct" for calculation of the base offense level if they were part of the same course of conduct as the counts leading to conviction.

903 F.2d at 898. Accordingly, Santiago's contention that as a matter of principle prior sales to Shattuck could not be considered is foreclosed.

■ The contention that the evidence was insufficient to establish that there were any prior sales has no greater merit. The government was required to establish those sales by a preponderance of the evidence, *see United States v. Shoulberg,* 895 F.2d 882, 886–87 (2d Cir.1990); *United States v. Guerra,* 888 F.2d 247, 251 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990), and we must "accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988); *see United States v. Parker,* 903 F.2d 91, 103 (2d Cir.1990); *United States v. Shoulberg,* 895 F.2d at 884. We will not overturn the court's application of the Guidelines to the facts before it unless we conclude that there has been an abuse of discretion. We see no clearly erroneous finding or abuse of discretion here.

The record included evidence that Shattuck had made some 12–18 trips to Vermont in the period February to August 1988 to deliver heroin to his customers; he said he had obtained heroin from Santiago on a dozen occasions. Telephone toll records supported Shattuck's statement. In addition, there was evidence of the postarrest admission by Santiago that he had sold heroin to Shattuck on five occasions, and of the postarrest statement by Priscilla that Santiago had made such sales on sev-

eral occasions. Though Santiago testified that he had made no such sales and no such admission, the district court found, as it was entitled to do, that his testimony was not credible. Further, in assessing Santiago's postarrest acknowledgement of five prior sales, the court was entitled to infer that such an admission was likely to have understated the actual number of prior transactions. We conclude that the district court's finding that Santiago had in fact made a dozen prior sales to Shattuck was amply supported.

■ The more interesting question is whether the evidence was sufficient to permit the court to find that Santiago's prior sales and the April 7, 1989 sale were part of the same course of conduct. The period during which the prior sales occurred dated back to the six-month period prior to Shattuck's August 1988 arrest, i.e., 8–14 months prior to the April 7 sale. This is considerably longer than the periods involved in most of our prior cases construing the Guidelines, especially those focusing on offenses other than conspiracy. See, e.g., United States v. Guerrero, 863 F.2d 245, 249–50 (2d Cir.1988) (two narcotics sales one week apart properly considered same course of conduct); see also United States v. Coe, 891 F.2d 405, 409–10 (2d Cir.1989) (upward departure from Guidelines not appropriate because, inter alia, four robberies spanning two weeks may be considered same course of conduct under § 1B1.3). Nonetheless, whether two or more transactions may be considered part of the same course of conduct is not determined by temporal proximity alone.

■ The phrase "same course of conduct" is not defined in the Guidelines. A normal reading, however, suggests that the sentencing court is to consider such factors as the nature of the defendant's acts, his role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern. As viewed by the Chairman and the General Counsel of the United States Sentencing Commission, which promulgated the Guidelines, the scope of this Guidelines concept may best be fathomed by noting that it is

similar to, but broader than, the scope of Fed.R.Crim.P. 8(a), which permits the joinder of two or more charges against a given defendant in a single prosecution if the charges "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan":

> [t]he phrase "same course of conduct," as used in subsection (a)(2) [of § 1B1.3], does not have an exact counterpart in Rule 8(a) of the Federal Rules of Criminal Procedure. The phrase, however, at least encompasses that portion of Rule 8(a) permitting joinder of offenses that "are of the same or similar character" or that involve "two or more acts or transactions connected together." The guideline term is broader than this analogous language, since it does not require a connection between the acts in the form of an overall criminal scheme. Rather, the guideline term contemplates that there be sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct.

Wilkins & Steer, Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines, 41 S.C.L. Rev. 495, 515–16 (1990) (emphasis in original; footnote omitted).

For purposes of analysis under Rule 8(a), "no one characteristic is always sufficient to establish 'similarity' of offenses," 8 Moore's Federal Practice ¶ 8.05[4], at 8–22 to 8–23 (2d ed. 1989), and each case depends largely on its own facts. We have held that Rule 8(a) did not prohibit the joinder of counts for two similar distributions of heroin simply because they occurred more than eight months apart. United States v. Adams, 434 F.2d 756, 760 (2d Cir.1970). Accord United States v. Sanders, 463 F.2d 1086, 1089 (8th Cir.1972) (narcotics sales eight months apart). Indeed, we have held that two thefts from the same warehouse, involving the same parties, were sufficiently similar to permit joinder although the thefts occurred two

years apart. *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980).

▪ Viewing the scope of the Guidelines' "same course of conduct" as broader than that of Rule 8(a)'s joinder principles, we cannot conclude that the mere fact that the events were separated by some eight months means they are not part of the same course of conduct. Certainly in Guidelines cases involving charges of conspiracy during periods spanning many months, we have in no way indicated any doctrinal limitation as to the period during which the "same course of conduct" may have occurred. In *United States v. Schaper*, for example, in which we remanded for consideration of the defendant's past narcotics sales, narcotics records reflected transactions for two months prior to the substantive offense, and the indictment charged a conspiracy dating back 11 months. We did not suggest any inherent temporal limitation on the transactions to be considered but noted only that any amounts considered must have been part of the same course of conduct as the counts leading to conviction. *See also United States v. Colon*, 905 F.2d at 588 (not suggesting any doctrinal temporal limitation but reserving decision only as to whether consideration of sales spanning a two-year period was justified by record).

▪ In the present case, the record supported the district court's determination that the prior sales were part of the same course of conduct as the April 7 sale. The fact that sales had been interrupted because of Shattuck's arrest, which obviously altered the behavior pattern of Shattuck, had no relevance to whether the April 7 delivery was part of the same course of conduct by Santiago. The evidence indicated plainly that Santiago, who suggested, *inter alia*, that the parties meet for the April 7 delivery in the same place they had met the time before, was prepared to continue selling precisely as he had done earlier. The fact that a period of some eight months had elapsed before a controlled buy could be arranged did not preclude a finding that Santiago's attempt to sell to Shattuck for the 13th time was part of the same

course of conduct as his prior 12 sales. In all the circumstances, we find no error or abuse of discretion in the district court's consideration of the prior sales by Santiago to Shattuck in calculating the base offense level.

### B. *Acceptance of Responsibility*

▪ Section 3E1.1(a) of the Guidelines provides for a two-level reduction in the defendant's offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Santiago contends that the district court improperly denied him this reduction on the grounds that he (a) refused to acknowledge his prior sales to Shattuck and (b) refused to admit that he had told Priscilla the contents of the narcotics package. The first contention has merit in light of our recent decision in *United States v. Oliveras*, 905 F.2d 623. In *Oliveras*, we ruled that the Guidelines do not require a defendant to accept responsibility for crimes other than those to which he has pleaded guilty, or of which he has been found guilty, in order to earn the credit for acceptance of responsibility. We noted that if the Guidelines did impose such a requirement, they would violate the defendant's Fifth Amendment privilege against self-incrimination. Thus, one basis for the district court's denial of the acceptance-of-responsibility reduction to Santiago was impermissible.

▪ If there were another clearly permissible basis for the court's denial of the reduction, we could affirm on that other basis notwithstanding the court's reliance on one flawed basis. We do not take that course here, however, for two reasons. First, the only other explicit basis for the court's denial was Santiago's refusal to acknowledge that he had informed Priscilla of the contents of the narcotics package. This basis is somewhat problematic, for we see no clear statement by the district court as to its rationale for viewing this refusal as bearing on Santiago's acknowledgement of his own responsibility, as contrasted with that of Priscilla, for the offenses of conviction.

Second, though there may have been still another basis for the court's denial of this credit, it was not articulated. After noting Santiago's denial with respect to the information given to Priscilla, the court stated that Santiago also "tended to minimize his involvement in relevant conduct issues *including* prior distribution to" Shattuck. Statement of Reasons for Sentence at 1 (emphasis added). This framing of the court's rationale may indicate that the court believed Santiago had not fully accepted responsibility for even the April 7 delivery, and the record may support such a view; but the court did not expressly adopt that as a rationale.

In sum, though "the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and his assessment "is entitled to great deference on review and should not be disturbed unless it is without foundation," Guidelines § 3E1.1 Commentary, Application Note 5, we find ourselves uncertain as to the district court's precise view of that foundation. Accordingly, we remand to the district court for reconsideration of the acceptance-of-responsibility issue without reference to Santiago's refusal to admit his prior sales, for an elaboration of the court's view of the significance of Santiago's refusal to admit that he informed Priscilla of the nature of the package, for such other findings as the court may consider appropriate, and for resentencing.

## CONCLUSION

For the above reasons, we affirm the district court's calculation of Santiago's base offense level with reference to his prior narcotics sales, and we vacate and remand for reconsideration of Santiago's acceptance of responsibility, and for resentencing in light of the foregoing.