35 F.3d 557
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Kenneth BANKS, a/k/a Kenny Banks, Defendant-Appellant.
 No. 92-7003.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 9, 1994.
Decided: August 18, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., Senior District Judge. (CR-90-41-N, CA-92-277-N)
 ARGUED: Kathryn C. Algozzine, Community Legal Clinics, George Washington University Law School, Washington, DC, for Appellant.
 Fernando Groene, Assistant United States Attorney, Norfolk, VA, for Appellee.
 ON BRIEF: Jennifer P. Lyman, Community Legal Clinics, George Washington University Law School, Washington, DC, for Appellant.
 Helen F. Fahey, United States Attorney, Norfolk, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises on appellant William Kenneth Banks' motion for relief under 28 U.S.C. Sec. 2255 (1988), claiming he received ineffective assistance of counsel at various stages throughout his defense. Because we find that Banks received assistance of counsel that was not constitutionally ineffective, we affirm the district court's order denying Banks' petition.
 
 I.
 
 2
 Beginning on March 9, 1990, Banks participated in two phone conversations with a federal prisoner, Gary Weathers, who was acting as a government informant. Weathers arranged a meeting between Banks and an undercover Drug Enforcement Administration (DEA) agent. On March 12, 1990, Banks met the DEA agent in a Norfolk, Virginia restaurant and later accepted 473 grams of what he believed to be heroin, but which was actually flour.
 
 
 3
 Banks was arrested and charged with attempting to possess and distribute a controlled substance, 21 U.S.C. Secs. 841(a)(1), 846 (1988 & Supp. II 1990), and unlawful use of a communication facility, 21 U.S.C. Sec. 843(b) (1988). Banks pleaded guilty to both charges on March 15, 1990.
 
 
 4
 A probation officer prepared a presentence report which included information, provided by FBI Special Agent James Watters, of prior drug related transactions involving Banks. Watters detailed heroin purchases and sales orchestrated by Banks between 1982 and 1988. In 1982, 1986, and 1987, Banks "sent" three different individuals to New York City to pick up heroin and bring it back to the Norfolk area. During 1986, Gary Weathers purchased heroin from Banks twice a week for at least three months, and in August 1988, Weathers purchased one kilogram of heroin from Banks. The probation officer concluded that Banks was responsible for a total of 8.9 kilograms of heroin, including the 473 grams of what Banks thought was heroin at the time of his arrest. The probation officer determined an offense level total of 36: 34 for the amount of heroin and a 2 level enhancement because Banks played an aggravating role as an organizer, leader, manager or supervisor.
 
 
 5
 On July 19, 1990, the district court conducted Banks' sentencing hearing. The court asked Banks' counsel if Banks had found any errors in the presentence report. Counsel responded:
 
 
 6
 Your honor, its a little unusual and I'm not sure how to address it to the Court. I've talked to Miss Cooper (the probation officer who prepared the report) this morning and Mr. Griffith (assistant U.S. attorney); I've talked to my client about it. We don't have any formal objection, either filed or to present to the Court, in regard to the presentence report, but he takes issue with the information that contained in paragraphs 8 through 11 in regard to the general offense, which was not part of the stipulated facts or discovery material that was discussed.
 
 
 7
 The court: 8 through 11?
 
 
 8
 Mr. St. Clair: Yes, sir, Your Honor, and I would suggest that while it might not have any effect on the overal (sic) sentence as imposed by the Court, well it might, because my client has--no objection to the fact that he received 473 grams of pseudo heroin, however, 8--8 or 6 through 11 would suggest that the overall conspiracy distributed 8.9 kilograms of heroin, which is a great deal more, which he's never heard any information, other than the probation officer saying that she received the information from the Federal Bureau of Investigation and information never shared with him or offered to the Court.
 
 
 9
 His position is that he was guilty and pled guilty to all the facts that are contained in paragraph 12, and in fact he is guilty and stands ready to accept that punishment.
 
 
 10
 We would ask the court to base its punishment on that incident and the use of the telephone communication and not punish him for things which he feels have never been presented as evidence, offered through indictment or given him an opportunity to defend himself on.
 
 
 11
 THE COURT: Well, I think that I told him at the time he pled guilty--and certainly the law is clear--that while he pleads guilty to one situation, his entire dealings--he'll be held accountable for that at the time of sentencing. I think the case law is clear on that from the Fourth Circuit.
 
 
 12
 Mr. St. Clair: Yes, sir, your honor, and for that reason, obviously we didn't file a formal objection because we think that's true, but we want to bring that to the attention of the Court--that his position is contrary to the Federal Bureau of Investigation's position.
 
 
 13
 J.A. 43-45. Later in the proceeding, Banks' counsel again stated that Banks denied any involvement in any of the other alleged transactions which occurred between 1982 and 1988. But counsel said that "if the Court feels they're part of the same transaction, we agree the case law says that, under conspiracy, he'd be guilty of all that and should be sentenced accordingly...." J.A. 69.
 
 
 14
 At the hearing, Special Agent Watters testified about the information he received implicating Banks in heroin transactions which totalled 7.3 kilograms over an eight year period.
 
 
 15
 Banks testified that he thought he was to pick up money and not heroin at the time he was arrested, but he admitted that he understood "boy" (the term used by Weathers during his phone conversation with Banks) to mean heroin and not money. Banks denied involvement in the other drug dealings enumerated by Special Agent Watters.
 
 
 16
 The court resolved all credibility issues against Banks, and applying 1B1.3(a)(2) of the United States Sentencing Guidelines,[1] the court found that Banks had participated in the sale or purchase of 7.773 kilograms of heroin.[2] Accordingly, the court sentenced Banks to 235 months of incarceration on Count I and 48 months, to run concurrently, on Count II.
 
 
 17
 Banks appealed his sentence to this court, raising the issues of whether the quantities of drugs involved in the unindicted conduct were properly included by the district court in its determination of his sentence, and whether it was proper to attribute to Banks an aggravating role in the offense. We affirmed in a per curiam opinion. United States v. Banks, No. 90-5828 (4th Cir. May 28, 1991).[3] Banks then filed a pro se petition for relief under 28 U.S.C. Sec. 2255 (1988), arguing, among other things, that he was denied effective assistance of counsel because his lawyer failed to object to the court's consideration of conduct that was outside the indictment. Banks claims his counsel should have objected to the inclusion of the other conduct because separate conspiracies were involved, and not the single, continuing conspiracy that the government had alleged, and such conduct was not part of the same scheme or plan as the offense of conviction as required by U.S.S.G. Sec. 1B1.3(a)(2).
 
 
 18
 On collateral review, the district court denied Banks' petition, finding that the government had adequately demonstrated that Banks had engaged in a single conspiracy to distribute heroin. In reaching this conclusion, the court applied a totality of the circumstances test, as outlined in United States v. MacDougall, 790 F.2d 1135, 1144 (4th Cir.1986). To satisfy the test for a single or ongoing conspiracy, a court must examine five factors: (1) the time period in which the alleged activities took place, (2) the type of offenses committed, (3) the places where the activity occurred, (4) the persons involved as coconspirators, and (5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted. Id.
 
 
 19
 The court acknowledged that Banks' criminal activity occurred over a period of years with considerable time gaps between transactions, but found this lengthy period was not fatal to a finding of a single conspiracy in light of the additional circumstances. Those circumstances included the facts that (1) Banks dealt exclusively with heroin, (2) the transactions occurred in the Norfolk and the New York-New Jersey areas, and (3) there was no indication that the conspiracy had been abandoned. The court found a common course of conduct or scheme to distribute heroin and that Banks' counsel's failure to object to this finding was objectively reasonable.
 
 II.
 
 20
 A criminal defendant's base offense level is determined by all relevant conduct, and not just by the actions and drug amounts underlying the count of conviction. United States v. Fells, 920 F.2d 1179, 1184 (4th Cir.1990), cert. denied, 111 S.Ct. 2831 (1991). However, unindicted conduct must be part of the same course of conduct or common scheme or plan to be properly considered for sentencing purposes. United States v. McNatt, 931 F.2d 251, 258 (4th Cir.1991), cert. denied, 112 S.Ct. 879 (1992).
 
 
 21
 Banks argues that the district court erred in considering drug transactions not included in the indictment as relevant conduct under U.S.S.G. Sec. 1B1.3(a)(2) because such conduct was not "part of the same course of conduct or common scheme or plan as the offense of conviction," and that his counsel's failure to object to the Government's inclusion of this conduct in the presentence report and to object to the court's consideration thereof amounted to ineffective assistance.
 
 
 22
 Under Strickland v. Washington, 466 U.S. 668, 686 (1984), counsel's conduct is ineffective if it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." To prove ineffective counsel, a criminal defendant must show that counsel's performance was deficient by demonstrating that counsel's representation fell below an objective standard of reasonableness. Id. at 687-91. Second, the deficiency must be prejudicial to the defendant. Id. at 687. To be prejudicial, it must be shown that but for counsel's errors the outcome of the proceeding was reasonably likely to have been different. Id. at 691-96.
 
 
 23
 We review de novo a district court's findings and legal conclusions regarding the performance of counsel and the prejudice to the defendant. Washington v. Murray, 4 F.3d 1285, 1288 (4th Cir.1993). However, the district court's findings of fact are reviewed under the clearly erroneous standard. Id.
 
 III.
 
 24
 Although there was some discussion between the court and Banks' attorney, a fair reading of the record reveals that a formal objection was never made to the Government's proffer of Banks' past criminal acts as relevant conduct under Sec. 1B1.3(a)(2). Counsel's failure to object foreclosed consideration of this issue on direct appeal, and the Sec. 1B1.3(a)(2) issue is now before us on collateral review.
 
 A.
 
 25
 The district court applied a conspiracy test to its analysis of whether Banks' other acts were the same course of conduct. Banks' counsel did not object to the application of the conspiracy test, nor did he object to the court's conclusion that Banks' various drug transactions constituted one conspiracy.
 
 
 26
 We believe that counsel's failure to object to the court's use of a conspiracy test was not objectively unreasonable. Other courts have applied similar tests in determining whether unindicted or unconvicted acts were the same course of conduct with the offense of conviction. See United States v. Santiago, 906 F.2d 867, 872-73 (2d Cir.1990); United States v. Gooden, 892 F.2d 725 (8th Cir.1989), cert. denied sub nom. Keener v. United States 496 U.S. 908 (1990). We also find that it was not objectively unreasonable for counsel not to object to the court's conclusion that Banks had participated in a single conspiracy. All of the transactions were similar in that Banks was the principal, heroin was sold, and the activity occurred in the New York-New Jersey and Norfolk areas. This ongoing pattern of heroin dealing in the same geographic areas was not improperly characterized as a single, continuing conspiracy.
 
 B.
 
 27
 Banks argues that his counsel's failure to object to the consideration of his other transactions as relevant under Sec. 1B1.3(a)(2) was objectively unreasonable in light of existing case law interpreting the same provision. At the time of sentencing, there was no settled Fourth Circuit interpretation of the "same course of conduct or common scheme or plan" language.[4]
 
 
 28
 However, in the case of United States v. Santiago, 906 F.2d 867 (2d Cir.1990), which was decided one month prior to Banks' sentencing, the Second Circuit considered the nature of the defendant's acts, his role, and the number and frequency of the acts along with the temporal proximity and similarity of the defendant's other conduct to the offense of conviction in determining whether the conduct was relevant under Sec. 1B1.3(a)(2). In Santiago, the defendant sold heroin to the same buyer two or three times a month between February and August 1988. The buyer was subsequently arrested but arranged for a final purchase in April 1989, where the defendant was arrested. The court acknowledged that the conduct considered, which occurred some 8 to 14 months before the offense of conviction, was considerably longer than the periods involved in most of its other cases construing the guidelines. However, in the Second Circuit's opinion, lack of temporal proximity between the conduct in 1988 and the offense of conviction in 1989 was not fatal to the district court's finding that all of the drug sales were the same course of conduct. The court found the similarities shared by the twelve narcotics sales and the one attempted sale, namely that the same two individuals participated in each sale, and the last two transactions occurred at the same place, outweighed any lack of temporal proximity. The court also stated, "[c]ertainly in Guidelines cases involving charges of conspiracy during periods spanning many months, we have in no way indicated any doctrinal limitation as to the period during which the 'same course of conduct' may have occurred." Id. at 873.
 
 
 29
 Other courts have taken similarly broad approaches to what may be considered the "same course of conduct or common scheme or plan." See United States v. Rutter, 897 F.2d 1558, 1562 (10th Cir.) (district court properly considered separate drug transactions that facilitated the commercial relationship between participants), cert. denied, 498 U.S. 829 (1990); United States v. Gooden, 892 F.2d 725, 729 (8th Cir.1989) (similar transactions occurring six to eight months prior to offense of conviction established pattern of continuous drug activity), cert. denied sub nom. Keener v. United States, 496 U.S. 908 (1990).
 
 
 30
 Case law existed at the time of Banks' sentencing where courts had applied Sec. 1B1.3(a)(2) to include conduct that had occurred in close temporal proximity to the offense of conviction. See United States v. Vazzano, 906 F.2d 879, 884 (2d Cir.1990) (conduct occurring within three weeks of convicted offense was relevant underSec. 1B1.3(a)(2)); United States v. Mann, 877 F.2d 688, 690 (8th Cir.1989) (drug sale three days prior to date of convicted offense was relevant); United States v. Taplette, 872 F.2d 101, 106 (5th Cir.) (drug sales occurring within three weeks of convicted offense were relevant), cert. denied, 493 U.S. 841 (1989). These cases are not inconsistent with the sentence imposed by the district court because they did not limit the application of Sec. 1B1.3(a)(2) to conduct occurring within close temporal proximity of the offense of conviction, and held only that the conduct in question in those cases was indeed relevant. Thus, Vazzano, Mann, and Taplette applied Sec. 1B1.3(a)(2) permissively, rather than restrictively, and are consistent with the actions of the district court at sentencing.
 
 
 31
 In light of existing case law interpreting the "same course of conduct or common scheme or plan," we cannot conclude that Banks' assistance of counsel was objectively unreasonable. Although Banks' conduct had occurred over an extended time period, at the time of sentencing the Guidelines had not imposed a doctrinal temporal limitation to what conduct may be considered relevant. Nor was the Second, Fifth, and Eighth Circuits' narrow application of Sec. 1B1.3(a)(2) a formal adoption of time limits to Sec. 1B1.3(a)(2). Furthermore, had the district court been apprised of these decisions, it is not reasonably likely that the district court would have taken a different position as to Banks' sentence.
 
 IV.
 
 32
 We find no merit to Banks' contention that he was denied effective assistance of counsel by his lawyer's failure to object to a two-level enhancement for Banks' aggravating role as an organizer, leader, manager, or supervisor.
 
 
 33
 For the foregoing reasons, the order of the district court is
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Sec. 1B1.3, Relevant Conduct (Factors that Determine the Guideline Range) provides in pertinent part:
 (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
 * * *
 (2) all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.
 
 
 [2]
 The 7.773 kilograms of heroin was less than the 8.9 kilograms determined by the probation officer, but under Sec. 2D1.1 of the Sentencing Guidelines, an offense involving at least three kilograms but less than ten kilograms of heroin results in a base offense level of 34
 
 
 [3]
 Although this court purportedly framed the first issue around the district court's consideration of the unindicted conduct, the court dispensed with this question and stated, "the only issue before us on this first allegation of error is whether the hearsay testimony provided by Watters and relied upon by the district court is factually correct."
 Since this court did not consider on direct appeal whether Banks' other conduct was properly considered relevant, the issue is not foreclosed on collateral review. See 28 U.S.C. Sec. 2255 (1988); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976).
 
 
 [4]
 This circuit has since adopted the three part test of temporal proximity, regularity and similarity of other conduct to the offense of conviction in determining whether the defendant acted in the "same course of conduct or common scheme or plan." United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir.1992)