**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                          No. 96-4070

JOSEPH ALVAREZ, a/k/a Joe Hill,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                          No. 96-4075

CLINT R. LAWSON,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, District Judge.
(CR-95-72)

Argued: October 27, 1997

Decided: May 5, 1998

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion. Judge Murnaghan
wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** William D. Turner, III, Lewisburg, West Virginia, for Appellant Lawson; Phillip A. Scantlebury, WHITE, SMITH, MORGAN & SCANTLEBURY, L.C., Bluefield, West Virginia, for Appellant Alvarez. Philip Judson Combs, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Rebecca A. Betts, United States Attorney, John C. Parr, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Joseph Alvarez, Clint R. Lawson and William P. Haskins were indicted for conspiracy and other drug related offenses in the same multi-count, multi-defendant indictment. Alvarez was convicted in a bench trial of conspiring to distribute and to possess with intent to distribute crack cocaine in violation of 21 U.S.C.§ 846 (1994) and was sentenced to 360 months imprisonment, five years supervised release, and a $10,000 fine. Lawson pleaded guilty to one count of cocaine distribution and was sentenced to 84 months imprisonment, three years supervised release, and a $2,000 fine. Haskins pleaded guilty to three counts of crack cocaine distribution and one count of aiding and abetting the distribution of crack cocaine and was sentenced to 420 months imprisonment, five years supervised release, and a $15,000 fine. In this consolidated appeal, Alvarez appeals his conviction and sentence, and Lawson appeals his sentence.* We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C.§ 3742. We affirm.

_____

*Haskins also appealed his sentence, and appellate counsel was appointed. Haskins later moved to strike the brief previously filed on his behalf by his counsel and notified the court that he would proceed pro

2

I. ALVAREZ

Viewed in the light most favorable to the government, the evidence at trial showed that in late March or early April 1995 Alvarez met Jose Ortiz, a longtime friend, in the Bronx, New York. Ortiz told Alvarez he was selling crack in Beckley, West Virginia, and Alvarez decided to join him. Alvarez then traveled to West Virginia with conspirators William Haskins and others. Ortiz remained in New York because his source was temporarily out of crack. Alvarez and Haskins began selling small amounts of locally-obtained crack while they waited for Ortiz to return with a larger supply of crack.

On April 23, 1995, Ortiz arrived in Beckley with 250 grams of crack, and Alvarez was fronted 28 grams. Ortiz, Mason and Haskins each took a portion of the crack, and Haskins hid the remainder in his aunt's house, where he and Alvarez were living. On April 26, Ortiz and Haskins met with state and federal undercover agents at a motel and exchanged cash and crack for firearms and a silencer. Ortiz and Haskins were immediately arrested.

While in jail, Ortiz telephoned Alvarez and told Alvarez that he needed money. Alvarez told Ortiz he had collected money owed to Ortiz from people who had been fronted crack, and Ortiz asked him to send the money to his family in New York. In addition, Haskins called Alvarez from jail and told him to sell the hidden crack. Haskins also called Clint Lawson and asked him to contact Alvarez and Mason about collecting some of the money owed Lawson.

Lawson saw Alvarez on several occasions and requested Haskins' money. At first, Alvarez said he would get money orders for Lawson. In fact, Alvarez never provided any money to Lawson or Haskins. During this time, Alvarez came to Mason with an ounce of crack that

_____

se. This court construed Haskins' motion to include a motion to relieve his counsel. By order, we relieved Haskins' counsel of his obligation of representation and permitted Haskins to proceed pro se. Consequently, we have severed Haskins case from those of Alvarez and Lawson for the purpose of the appeal and will decide it separately. Cf. United States v. Jackson, 863 F.2d 1168, 1170 n.1 (4th Cir. 1989).

he said he found, and they split and sold it. In September 1995, Alvarez was arrested while in possession of 4.51 grams of crack.

Although Alvarez wanted to go to trial with his co-defendants who had been previously arrested, the co-defendants all entered guilty pleas. Originally, attorney Mark Wills represented Alvarez, but was replaced by Clinton W. Smith when Wills fell ill. At a pre-trial hearing, Alvarez requested new counsel because, he claimed, attorney Smith wanted him to plead guilty, and the court declined. Alvarez then said he wanted to waive a jury trial because his lawyer told him he could not receive a fair trial before a white West Virginia jury. The district court assured Alvarez that he could get a fair trial and deferred accepting his waiver so that he could consult with his attorney. Later, Alvarez executed a written waiver of a jury trial and was tried before the court. Ortiz, Haskins, Mason, and Clint Lawson testified at the trial. Alvarez did not testify, and the court found him guilty. Alvarez challenges his conviction on multiple grounds.

Alvarez first maintains that the district court erred in failing to advise him of his right to testify and in failing to determine in the record that his decision not to testify was knowing and intelligent. A district court has no duty to advise a defendant of his right to testify or to obtain an on-the-record waiver. United States v. McMeans, 997 F.2d 162, 163 (4th Cir. 1991). Alvarez's attorney had the primary responsibility for advising him that he had the right and whether he should exercise it. See United States v. Ortiz , 82 F.3d 1066, 1070 (D.C. Cir. 1996). In this case, the district court did not advise Alvarez of his right to testify or ask whether he knew he had the right. Nevertheless, there is nothing in the record that reveals Alvarez did not know of the right or wished to testify but was prevented from doing so by his attorney. Representation by counsel gives rise to a presumption of waiver. Ortiz, 82 F.3d at 1071. Accordingly, we find this claim has no merit.

Alvarez next asserts that his jury trial waiver was unknowing and involuntary because the district court did not question him on the record about the voluntariness of the waiver. Under Fed. R. Crim. P. 23(a), a defendant may waive a jury trial if the waiver is in writing and has the approval of the court and the consent of the government. The government and the court consented to a bench trial. We have

4

held that an in-court colloquy to determine voluntariness of the waiver is good practice, but it is not required by the Constitution or Rule 23(a). United States v. Hunt, 413 F.2d 983, 984 (4th Cir. 1969). We find it noteworthy, but not legally significant, that although not required, the district court made Alvarez aware of the fact that the jury would consist of members of the community, that he could participate in the selection of the jury, and that the court would try him if he waived a jury trial.

Alvarez also contends that his attorney was ineffective. Claims of ineffective assistance are not properly raised on direct appeal unless the record conclusively discloses that the defendant received inadequate representation. United States v. Smith, 62 F.3d 641, 651 (4th Cir. 1995). The record does not conclusively establish ineffective assistance in this case.

In addition, Alvarez argues that the district court should have appointed new counsel based on his representations that his attorney advised him to waive a jury trial because he could not get a fair trial from a white West Virginia jury. Nonetheless, the record demonstrates that when Alvarez made the statement regarding a fair trial from a white jury the court had already denied his request for new counsel. A district court's decision to deny a request for new counsel is reviewed for abuse of discretion. United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994). The factors to consider are the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint about his current counsel, and whether the attorney-client relationship had deteriorated to the point that there was a complete lack of communication preventing an adequate defense. Mullen, 32 F.3d at 895.

Alvarez made his request 15 days after new counsel was appointed to replace his first attorney, who withdrew for health reasons. Alvarez complained that the second attorney did not want to go to trial and urged him to plead guilty. The district court conducted a brief but adequate inquiry. The attorney explained that he had read all of the relevant materials and had simply presented the government's plea offer for Alvarez's consideration. There is no indication that communications had broken down completely at that point, and the attorney subsequently conducted a vigorous defense of Alvarez during his

5

bench trial. On these facts, we find that the district court did not abuse its discretion in denying the motion for new counsel.

Alvarez further claims that there was insufficient evidence to convict him of participation in the conspiracy because the testimony of Ortiz, Haskins and Mason was inconsistent and incredible. He notes that the witnesses gave slightly different accounts of the conversation in which Ortiz and Alvarez agreed that Alvarez would go to West Virginia. Viewing the evidence in the light most favorable to the government, a verdict must be upheld if it is supported by substantial evidence such that a trier of fact could find the elements of the crime proven beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). The elements of conspiracy are: an agreement between two or more persons to violate the federal drug laws; and the defendant's willful joinder in that agreement or undertaking. 21 U.S.C. § 846; United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991). We agree with the district court that the slight differences in detail on which Alvarez bases his argument do not outweigh the evidence that Alvarez agreed to sell crack with the others in West Virginia and did so.

Alvarez contests the district court's decision not to give him a minor or minimal role adjustment. United States Sentencing Guidelines Manual § 3B1.2 (1995). In addition, he challenges the district court's decision to give him a 2-level adjustment for obstruction of justice because of the threats he made to other conspirators. United States Sentencing Guidelines Manual § 3C1.1, comment. n.3(a) (1995) (threatening or attempting to threaten co-defendant or witness). Alvarez also disputes the enhancement he received under the United States Sentencing Guidelines Manual § 2D1.1(b)(1) (1995), which provides for a 2-level increase if a dangerous weapon, including a firearm, was possessed during the offense. The district court's factual findings on these matters were not clearly erroneous. United States v. Brooks, 957 F.2d 1138, 1149 (4th Cir. 1992).

Also regarding his sentence, Alvarez argues that the 250 grams of crack that Ortiz brought to West Virginia from New York on April 23, 1995, should not be attributed to him because he did not help obtain it and only sold a small portion of it. The district court, however, properly found that the entire amount was part of Alvarez's rele-

vant conduct because he was responsible for all acts undertaken by his co-conspirators in furtherance of the conspiracy and within the scope of his own agreement. United States Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (1995).

Finally, Alvarez contends that the district court erred by admitting all evidence concerning the activities of Ortiz, Haskins, and Mason before the time he came to West Virginia, as well as evidence of the crack-for-guns exchange with undercover police. Such evidentiary rulings by the district court are reviewed for abuse of discretion. United States v. Boyd, 53 F.3d 631, 635 (4th Cir.), cert denied, 116 S.Ct. 322 (1995). Assuming that the issues were preserved for appeal, the district court did not abuse its discretion in admitting this evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The challenged evidence was relevant to prove the existence of the conspiracy that Alvarez joined and also to show that the conspirators' methods included firearms. Finding Alvarez's claims meritless, we affirm.

II. LAWSON

Lawson pleaded guilty to a charge of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1). The activity giving rise to the charge was the sale of .49 grams of cocaine base to a government informant in January 1994. In sentencing Lawson, the district court found that the 28 grams of crack that he distributed to guests at a Super Bowl party, including the same government informant, in January 1995 was part of the same course of conduct as the three grams of crack he possessed in January 1994, .49 grams of which he distributed to the government informant. See United States Sentencing Guidelines Manual § 1B1.3(a)(2) (1995). The result was that Lawson's Base Offense Level was 28, and his Total Offense Level was 25. Lawson contends that the district court erred in its relevant conduct assessment. We review the court's factual findings for clear error. United States v. Williams, 977 F.2d 866, 870 (4th Cir. 1992).

The United States Sentencing Guidelines Manual § 1B1.3(a)(2) (1995) provides for a sentencing adjustment for "all acts and omis-

7

sions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Activities are part of the same course of conduct or common scheme or plan if they meet the "similarity, regularity and temporal proximity" test of United States v. Mullins, 971 F.2d 1138, 1143-44 (4th Cir. 1992). Weak evidence for one prong of the Mullins test can be overcome by a strong showing as to the other prongs. Mullins, 971 F.2d at 1144. Because the charge to which Lawson pleaded guilty was a distribution charge, a proper frame of reference in evaluating the Mullins test is distribution, rather than necessarily conspiracy.

Two transactions were described in Lawson's presentence report, and the government presented no further evidence at his sentencing. The district court concluded that the activities were similar. The government conceded that the crack came from different sources, but demonstrated that it was distributed in the same area on both occasions. The fact that the cocaine base in the two instances may have originated from different sources does not make the distributive conduct dissimilar. Moreover, it is clear from United States v. Washington, 41 F.3d 917 (4th Cir. 1994), that the sharing of cocaine base with friends at the 1995 Super Bowl party is a distribution of cocaine base equivalent to the sale of the drug. Thus, both distributions were similar in that they both involved cocaine base and occurred in the same area.

The district court also concluded that the activities were temporally proximate. In United States v. Santiago, 906 F.2d 867 (2d Cir. 1990), the court found that drug sales that were eight to fourteen months prior to the drug distribution that resulted in conviction had sufficient temporal proximity and were properly attributed to the defendant as relevant conduct. The district court in the present case made a like finding, and we do not conclude that it was clearly erroneous.

We need not address whether the two transactions are sufficiently regular because a sufficiently strong showing was made with regard to temporal proximity and similarity to overcome any weakness in regularity. Nevertheless, we observe that the district court may have construed the evidence regarding the 1995 Super Bowl party distribution as evidence of Lawson's intent to continue distributing cocaine base. Cf. Santiago, 906 F.2d at 873. Therefore, the district court did

8

not err by including the January 1995 cocaine base distribution in Lawson's sentencing.

For the reasons discussed above, the judgments of the district court with regard to Alvarez and Lawson are

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring in part and dissenting in part:

While I concur in that portion of the majority's opinion which affirms the conviction and sentence of Alvarez, I respectfully dissent from the majority's conclusion that Lawson was properly sentenced. Accordingly, I would vacate Lawson's sentence and remand for resentencing.

Because the government did not seek to prosecute Lawson for the distribution of 28 grams of cocaine base in January 1995, but obtained a conviction only with respect to Lawson's sale of cocaine base in January 1994, Lawson's 1995 conduct may not be taken into consideration for sentencing purposes unless the 1995 distribution and 1994 sale were part of the same "course of conduct" under § 1B1.3(a)(2) of the Sentencing Guidelines. I agree with the majority that the course of conduct inquiry is guided by the three-part test of temporal proximity, regularity, and similarity set forth in United States v. Mullins, 971 F.2d 1138 (4th Cir. 1992). Unlike the majority, however, I believe the government failed to establish that Lawson's 1994 offense of conviction and 1995 conduct were "sufficiently connected or related to each other as to warrant the conclusion that they [were] part of a single episode, spree, or ongoing series of offenses." U.S. Sentencing Guidelines Manual § 1B1.3 cmt. 9(B) (1995).

I cannot reconcile the majority's finding that Lawson's two offenses are temporally proximate with either the definition of proximity* or our conclusion in Mullins that a lapse of six months

_____

*Webster's Third New International Dictionary defines "proximate" as "very near," or "immediately adjoining," and "proximity" as "the quality or state of being proximate, next, or very near." Webster's Third New International Dictionary 1828 (1993).

9

between offenses rendered the element of temporal proximity "extremely weak . . . , if present at all." Mullins, 971 F.2d at 1144. If offenses separated by six months are temporally remote, logic counsels that offenses divided by an interval of twice that duration are not temporally proximate.

The majority relies on United States v. Santiago , 906 F.2d 867 (2d Cir. 1990), in which the Second Circuit held that the defendant's course of conduct included twelve sales of heroin which occurred more than eight months before the offense of conviction. Id. at 872-73. The Santiago court did not find, contrary to the majority's assertion, that the offenses were temporally proximate, but determined that the strength of the evidence on the factors of similarity and regularity supported attribution of the twelve drug sales to the defendant. Recognizing that the interval was "considerably longer" than that involved in prior cases, the court remarked "[n]onetheless, whether two or more transactions may be part of the same course of conduct is not determined by temporal proximity alone." Id. at 872.

Moreover, it was clear in Santiago that the lapse between offenses had been caused by the arrest of the defendant's buyer, and not by a voluntary abandonment of the course of conduct. The absence of temporal proximity will not preclude a course of conduct finding if the interval results because "participants are forced to put the venture `on hold.'" United States v. Hill, 79 F.3d 1477, 1483 (6th Cir. 1996). The government here, however, failed to show that the twelve-month lapse between Lawson's offenses was caused by something other than Lawson's voluntary abandonment of the course of conduct. Nothing in the record suggests that Lawson, for example, was unable to obtain cocaine base for distribution between January 1994 and January 1995, or that he could not locate purchasers for his product. Moreover, the government failed to demonstrate that Lawson distributed drugs during the interval. Therefore, I believe that the unexplained suspension of drug distribution for an entire year must bar a determination that Lawson's offenses were part of the same course of conduct unless the government has made a strong showing of both similarity and regularity.

With respect to similarity, I am unconvinced that the government may make the required showing merely by asserting that two offenses

involved the same controlled substance and occurred in approximately the same location. The fact that offenses are "of the same kind" does not demonstrate that they are part of the same course of conduct. See Mullins, 971 F.2d at 1145. Particularly when uncharged conduct is temporally remote from the offense conduct, "it is not enough that the extraneous conduct merely amounts to the same offense as the offense for which the defendant was convicted. Rather, in looking beyond the offense of conviction, [the] court must consider whether specific similarities exist between" the two offenses. United States v. Hahn, 960 F.2d 903, 910 (9th Cir. 1992) (emphasis added) (internal citations omitted). Relevant factors include "the similarity of the offenses (i.e., two sales of cocaine as opposed to a sale of cocaine and a sale of LSD); the quantities involved; the location of the offenses; [and] the identity of the supplier, buyer, or other participants." United States v. Wilson, 106 F.3d 1140, 1144 (3d Cir. 1997) (citing Hill, 79 F.3d at 1484-85).

Specific similarities between Lawson's 1994 and 1995 offenses are few. The government conceded that Lawson's supplier for the 1994 sale was not the person who supplied Lawson with cocaine base in 1995. Furthermore, I find no support in the record for the majority's conclusion that the government informant who purchased cocaine base from Lawson in 1994 was present at the 1995 Super Bowl party. Lawson's presentence investigation report does not indicate that the informant was a guest at that party, and Lawson did not admit during sentencing that the informant had attended. Moreover, the quantities involved in the two offenses--.49 grams in 1994 and 28 grams in 1995--were markedly different.

The fact that both offenses may be swept within the broad definition of "distribution" does not establish an aspect of similarity. "In evaluating offenses under the similarity prong, a court must not do so at such `a level of generality that would render worthless the relevant conduct analysis.'" Wilson, 106 F.3d at 1144 (quoting Hill, 79 F.3d at 1483). The dissimilar methods of distribution used in Lawson's offense of conviction and uncharged conduct undermine a finding of similarity.

Finally, regularity is not established where the government has proved only one dissimilar offense in addition to the offense of con-

11

viction. See Mullins, 971 F.2d at 1144 (finding an absence of regularity where the uncharged conduct comprised one prior scheme to defraud several life insurance companies); Hill , 79 F.3d at 1484 (holding that "[r]egularity is completely absent here, for the government proved only one prior offense."). I cannot agree with the majority, in the absence of any evidence that Lawson regularly engaged in the distribution of narcotics, that a finding of regularity may be based on speculation that Lawson intended to continue to distribute cocaine base in the future.

In sum, the government here proved only that Lawson twice distributed cocaine base, to different persons, on discrete occasions separated by an unexplained twelve-month interval, obtained from different suppliers, in vastly different amounts, and by varying methods. Both temporal proximity and regularity are absent, and there is only the most general similarity between Lawson's two offenses. Because I believe that the evidence is insufficient to support a conclusion that Lawson's 1994 and 1995 offenses were part of the same course of conduct, I would vacate Lawson's sentence and remand for resentencing.

12